IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TRACEY LAURICE OLIVER,<br><br>    Plaintiff,<br><br>  v.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of Social Security,<br><br>    Defendant.<br>_____/ | No. C 09-02014 JSW<br><br>**ORDER REGARDING CROSS-MOTIONS FOR SUMMARY JUDGMENT** |

Now before the Court is the motion for summary judgment filed by plaintiff Tracey Laurice Oliver ("Oliver") and the cross-motion for summary judgment filed by defendants Commissioner of the Social Security Administration ("Commissioner"). Pursuant to Civil Local Rule 16-5, the motions have been submitted on the papers without oral argument. Having carefully reviewed the administrative record and considered the parties' papers and the relevant legal authority, the Court hereby DENIES IN PART and GRANTS IN PART Oliver's motion for summary judgment and GRANTS IN PART and DENIES IN PART the Commissioner's cross-motion for summary judgment.

**BACKGROUND**

Oliver brings this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of a final decision of the Commissioner denying her request for Social Security benefits. On December 2, 2005, Oliver applied for supplemental security income ("SSI") benefits pursuant to Title XVI of the Social Security Act ("Act"). (Court Transcript ("Tr.") at 125-31.)

1  The Commissioner denied Oliver's application initially and upon reconsideration. (Tr. at 74-
2  75.) Oliver then requested a hearing before an administrative law judge ("ALJ"). (Tr. at 90.)
3  The ALJ initially held a hearing on January 15, 2008. (Tr. at 18.) Oliver did not appear,
4  although her counsel did. (*Id.*) Having found good cause for Oliver's absence, the ALJ
5  rescheduled the hearing for May 20, 2008. (Tr. at 41-42, 112-17.) Oliver attended this hearing
6  and was represented by counsel. (Tr. at 27-73.) Also present at the hearing was Vocational
7  Expert ("VE") Stephen P. Davis. (Tr. at 10, 113-16.) The ALJ denied Oliver SSI benefits in a
8  written decision on November 5, 2008. (Tr. at 7-15.) Oliver requested review of the hearing
9  decision, and on March 25, 2009, the Appeals Council denied Oliver's request for review, at
10 which time the ALJ decision became the final decision of the Commissioner of Social Security.
11 (Tr. at 2-4.) Oliver thereupon commenced this action for judicial review.

12 Oliver's alleged disability stems primarily from foot pain and depression. (Tr. at 13.)
13 At the time of her hearing, Oliver was a forty-one year-old female, approximately five-feet-four
14 inches tall, weighing approximately one-hundred and twenty pounds. (Tr. at 18, 148, 182.)
15 The highest educational level Oliver completed was the eleventh grade. (Tr. at 41.)

16 Oliver was unemployed between 1990 and 2000. (Tr. at 140.) She asserts that she
17 became unable to work because of her foot pain in 1995. (Tr. at 149.) From 2000 to 2001,
18 Oliver was employed as an onsite manager at an apartment complex. (Tr. at 32-36, 149.) As an
19 onsite manager, Oliver answered phones, collected rent, generated receipts for rental payments,
20 recorded other information, assisted in the cleaning of vacated rooms, and used a machine to
21 clean the swimming pool. (Tr. at 32-36, 141, 150.) Oliver states that she stopped working in
22 December 2001 because she was "laid off." (Tr. at 149.) Oliver also states that she stopped
23 working at the apartment in 2001 when her foot pain got worse. (Tr. at 37.) Oliver has not had
24 substantial gainful employment since 2001. (Tr. at 149.)

25 Regarding her foot pain, Oliver first saw her treating physician, podiatrist Dr. Paul
26 Weiner ("Dr. Weiner"), on December 22, 1999. (Tr. at 207.) Oliver did not see Dr. Weiner
27 between 2001 and October 16, 2006. (*Id.*) Dr. Weiner diagnosed Oliver with Plantar Fasciitis,
28 bunions, and painful calluses. (*Id.*) He noted that Oliver's reported symptoms included pain

2

1 with standing and walking, and also noted that x-rays indicated boney deformities to bunions 2 and Tailor's bunion deformity. (*Id.*) He prescribed Vicodin and injected steroids. (Tr. at 13, 3 53-54.) In completing Oliver's functional assessment, Dr. Weiner noted that in an eight hour 4 day, Oliver could sit continuously for eight hours and stand or walk occasionally for three 5 hours. (Tr. at 207-08.) Dr. Weiner also opined that Oliver's pain may affect her concentration, 6 persistence and pace, but would not "seriously interfere with the patient's ability to perform 7 simple, routine work on a productive basis." (Tr. at 208.) On May 27, 2008, Dr. Weiner 8 reported that Oliver continues to experience pain in both feet at the same intensity, and 9 developed a new corn. (Tr. at 245.)

10 On February 11, 2006, Oliver was also examined by Dr. Marcus Ware ("Dr. Ware"), 11 M.D., Ph. D., at the request of the Disability Determination Service. (Tr. at 13, 187-90.) Dr. 12 Ware diagnosed Oliver with Hammertoes and Plantar Fasciitis. (Tr. at 189.) He also opined 13 that Oliver could be expected to stand for approximately four hours per day, could lift or carry 14 thirty pounds frequently and forty pounds occasionally, with lifting capacity limited only due to 15 pain in her feet. (*Id.*) The ALJ ultimately accepted the assessment of Oliver's treating 16 podiatrist Dr. Weiner, as it was the more limiting of the two assessments and Dr. Weiner, as the 17 treating physician, is entitled to more weight. (Tr. at 13.)

18 Regarding her depression, Oliver was evaluated by Bruce W. McGhee ("McGhee"), a 19 licensed clinical social worker employed by the Solano Public Health clinic. (Tr. at 241-44.) 20 McGhee met with Oliver on December 18, 2007 and May 8, 2008. (Tr. at 14, 242.) McGhee 21 noted the following symptoms and signs: audio/visual perception distortions (probably due to 22 fatigue); depressed mood for most of the day, more days than not for at least two years; 23 insomnia; poor concentration; and low self esteem. (Tr. at 242.) McGhee also noted a Duke's 24 Anxiety/Depression Screening Score of 11, which "indicates severe symptoms [are] likely." 25 (*Id.*) On May 16, 2008, McGhee provisionally diagnosed Oliver with Dysthymic Disorder. He 26 opined that Oliver was moderately limited in her ability to make simple work-related decisions, 27 and was also markedly limited in her ability to perform activities within a schedule and at a 28 consistent pace without an unreasonable number of rest periods. (Tr. at 242-43.)

3

1   Oliver filed a Disability Report wherein she stated that the 2000-2001 onsite manager
2   job required her to perform administrative work, collect rent, file and send notices, clean the
3   surroundings, the pool, and soon-to-be-rented apartments. (Tr. at 150.) Additionally, Oliver
4   described standing or walking for four hours per day and sitting for four hours per day. (*Id.*)
5   Furthermore, Oliver stated she would lift paint cans, towels, and other things, frequently lifting
6   objects less than ten pounds while the heaviest weight lifted was fifty pounds. (*Id.*)

7   At the May 20, 2008 hearing, Oliver testified regarding her foot pain and depression.
8   (Tr. at 37, 51-62.) During her testimony, Oliver accepted the ALJ's finding that while
9   employed as an onsite apartment manager, she spent approximately three hours of the day
10  walking and five hours sitting. (Tr. at 67.) Oliver also testified that "there wasn't too much
11  lifting" required by the onsite manager job. (Tr. at 64.) The VE classified Oliver's job as an
12  office helper and testified that the job was "classified as light, performed at sedentary." (Tr. at
13  68.) The Court shall discuss additional facts as necessary in the analysis.

## ANALYSIS

### A.   Applicable Legal Standards

A federal district court may not disturb the Commissioner's final decision unless it is based on legal error or the findings of fact are not supported by substantial evidence. 42 U.S.C. § 405(g); *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998). "Substantial evidence means more than a mere scintilla, but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). To determine whether substantial evidence exists, courts must look at the record as a whole, considering both evidence that supports and undermines the ALJ's findings. *Reddick*, 157 F.3d at 720. The ALJ's decision must be upheld, however, if the evidence is susceptible to more than one reasonable interpretation. *Id.* at 720-21.

The plaintiff has the burden of establishing a prima facie case for disability. *Gallant v. Heckler*, 753 F.2d 1450, 1452 (9th Cir. 1984). The ALJ follows a five-step process in determining whether the claimant is disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); *see* 20 C.F.R. § 404.1520. First, the claimant must not be engaging in substantial gainful

4

1 activity. § 416.920(b). Second, the claimant must have a severe impairment. § 416.920(c).
2 Third, if the claimant's impairment meets or equals one of the impairments listed in Appendix 1
3 to the regulation (a list of impairments presumed severe enough to preclude work), the claimant
4 will be found disabled without consideration of age, education, or work experience.
5 § 404.1520(d). Fourth, if the claimant's impairments do not meet or equal a listed impairment,
6 the ALJ will assess and make a finding about the claimant's residual functional capacity
7 ("RFC") based on all relevant medical and other evidence in the claimant's case record.
8 § 416.920(e). If the claimant can still perform her past relevant work, she will not be found
9 disabled, otherwise the ALJ will go to step five. § 416.920(f). At the fifth step, if the
10 claimant's impairments prevent her from making an adjustment to any other work in the
11 national economy, she will be found disabled. § 404.1520(g). The claimant has the burden of
12 proof at steps one through four; the burden shifts to the Commissioner at step five. *Tackett v.*
13 *Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

**B.      The Parties' Motions for Summary Judgment.**

In Oliver's case, the ALJ found that, at step one, Oliver had not engaged in substantial gainful activity since November 1, 2005. (Tr. at 12.) At step two, the ALJ found that Oliver had severe impairments of plantar fasciitis with corns, hammer toes, affective disorder, and deep plantar lesions (warts). (Tr. at 12.) At step three, the ALJ found that Oliver did not have an impairment or combination of impairments that met or medically equaled the listed impairments. (Tr. at 12.) At step four, the ALJ found that Oliver had the RFC to perform sedentary work because she could "stand and walk for up to three of eight hours and is limited to the performance of simple repetitive tasks." (Tr. at 12.) The ALJ found that Oliver was capable of performing past relevant work as an office helper because this work does not require performance of work-related activities precluded by Oliver's RFC. (Tr. at 15.) Therefore, the ALJ made the determination at step four that Oliver was not disabled and denied her SSI benefits. (Tr. at 12-15.)

Oliver argues that the ALJ's decision should be reversed or remanded because the ALJ committed legal error and his decision was not supported by substantial evidence. Specifically,

5

Oliver contends that the ALJ: (1) erred in rejecting the opinion of a licensed social worker; and (2) erred in accepting the VE's classification of her onsite manager job as an office helper performed at a sedentary level. The Court will address each of these arguments in turn.

**1. The ALJ Reasonably Rejected the Opinion of a Licensed Social Worker.**

McGhee, a licensed clinical social worker, provisionally diagnosed Oliver with Dsythymic Disorder and assessed her functional impairments. Oliver argues that the ALJ erred in rejecting McGhee's opinion regarding depression. Oliver appears to assert the ALJ's reasoning was "flawed" on three grounds: (1) for rejecting McGhee's opinion regarding the severity of impairment; (2) for discounting McGhee's opinion on the basis of a limited treatment relationship; and (3) for rejecting McGhee's diagnosis because of its inconsistency with the record. These arguments are without merit. The ALJ committed no legal error; his evaluation and ultimate rejection of McGhee's opinion was reasonable.

Only an "acceptable medical source" can establish whether a claimant has a medically determinable impairment. 20 C.F.R. § 416.913(a). Medical sources who are not "acceptable medical sources" are considered "other sources" that cannot establish the existence of a medically determinable impairment. *See id.* (defining acceptable medical sources.) However, these other sources may be used to "provide insight into the severity" of the impairment and its impact on the individual's ability to function, once the existence of the impairment has been established by an acceptable medical source. *See* Soc. Sec. Rule 06-03p; 20 C.F.R. § 404.1513(a), (d). "Non-medical testimony can never establish a diagnosis or disability absent corroborating competent medical evidence." *Snow v. Astrue*, 2010 WL 685004, *9 n. 4 (E.D. Wash. Feb 22. 2010) (citing *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996).

A licensed clinical social worker is not considered an "acceptable medical source." Rather, an LCSW is considered an "other source," as defined by 20 C.F.R. §§ 404.1513(d) and 416.913(d). *See* Soc. Sec. Rule 06-03p. McGhee, as a licenced social worker, is not an acceptable medical source, and therefore, he cannot establish the existence of a medically determinable impairment. *See* 20 C.F.R. § 404.1513(a), (d); *see also Metivier v. Barnhart*, 282 F. Supp. 2d 1220, 1226 (D. Kan. 2003) (holding that a social worker's opinion, as an "other

6

1  source" pursuant to 20 C.F.R. § 404.1513(d), "cannot be the only evidence showing
2  disability"); *Borrie v. Astrue*, 2009 WL 2579497 (C.D. Cal. Aug. 19, 2009) ("Because a social
3  worker is not an acceptable medical source, evidence from the social worker is not considered
4  relevant medical evidence."); Soc. Sec. Rule 06-03p. Because the existence of Dysthmic
5  Disorder was not established by an acceptable medical source, McGhee cannot opine as to
6  Oliver's functional limitations or provide insight as to the severity of Oliver's depression.
7  Accordingly, the ALJ correctly determined that McGhee's opinion was not entitled to
8  deference.

9  Moreover, to the extent that the ALJ could consider McGhee's opinion regarding
10 Oliver's limitations, as an "other source," the ALJ was entitled to not give McGhee's opinion
11 much weight. The factors an ALJ may apply in determining whether to give weight to the
12 opinion of an "other source" include the length of the relationship, the frequency of
13 examinations, whether the source presents relevant evidence in support of the opinion, and
14 whether the opinion is consistent with the record as a whole. *See* Soc. Sec. Rule 06-03p. Here,
15 the ALJ did not accept McGhee's assessment, in part, because he had seen Oliver "exactly
16 twice" and questioned "whether this comprises a treatment relationship . . . particularly where
17 treatment notes are nonexistent." (Tr. at 14.) McGhee only treated Oliver on December 18,
18 2007 and May 8, 2008. (Tr. at 242.) McGhee provisionally diagnosed McGhee with
19 Dysthymic Disorder. *Id.* However, McGhee noted that he had "insufficient data" both to assess
20 the effectiveness of treatment and determine the onset of Oliver's functional restrictions. *Id.*
21 McGhee's own comments that Oliver's diagnosis was provisional based on two visits and that
22 further assessment was warranted underscore the limited length and frequency of treatment
23 underlying the provisional diagnosis. (Tr. at 244.)

24 Moreover, McGhee's findings regarding Oliver's limitations were not supported by
25 other evidence in the record. As the ALJ noted, Oliver never received mental health treatment
26 outside of the December 2007 and May 2008 meetings with McGhee. (Tr. at 14.) The ALJ
27 further noted that despite being given a prescription for an anti-depressant medication, the
28 prescription was never refilled. (Tr. at 14.) The ALJ reasoned that Oliver's failure to

7

1 consistently pursue any form of mental health treatment suggested that Oliver was "not as
2 troubled by her symptoms as Mr. McGhee believes." (Tr. at 14.) Therefore, the ALJ's
3 decision not to accept McGhee's opinion was reasonable.

### 2. The ALJ improperly determined that Oliver could perform past relevant work.

Oliver challenges the step four finding that she is able to perform past work as an onsite apartment manager because she rejects the VE's classification of her onsite manager job as an office helper performed at a sedentary level. Sedentary work is defined as work which "involves lifting no more than 10 pounds at a time . . . [and is] sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. § 416.967(a). "Since being on one's feet is required 'occasionally' at the sedentary level of exertion, periods of standing or walking should generally total no more than about 2 hours of an 8-hour workday." SSR 83-10 at *5; *see also Aukland v. Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001) (citing SSR 83-10).

Here, the ALJ erred in relying on the VE's characterization of Oliver's past relevant work as sedentary. During the VE's examination of Oliver during her hearing, the ALJ characterized Oliver's onsite apartment manager job as involving three hours walking and five hours sitting, to which Oliver replied regarding the five hours sitting, "that sounds like [sic] of right." (Tr. at 67.) The VE stated: "Okay. Then it's sedentary. So what I did, Your Honor, I classified her as an office helper."[1] (Tr. at 67.) The VE's characterization of the three hours of standing and walking as being consistent with sedentary work contradicts the requirement that sedentary work involve only occasional walking and standing, typically totaling no more than two hours of an eight-hour work day. 20 C.F.R. § 416.967(a); SSR 83-10 at *5. Because the ALJ relied on this erroneous classification of past relevant work at stage four of the sequential evaluation, his determination that Oliver could return to past relevant work as an office helper was flawed.

---

[1] *See Dictionary of Occupational Titles*, 239.567-010 (describing job tasks and strength requirements of an office helper.)

8

It is within the Court's discretion to decide whether to reverse and remand for further administrative proceedings or to reverse and award benefits. *McAlister v. Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989). Remand is appropriate where additional proceedings would remedy defects in the ALJ's decision, and where the record should be developed more fully. *Marcia v. Sullivan*, 900 F.2d 172, 176 (9th Cir.1990). In the instant case, remand is appropriate for the ALJ to determine whether Oliver's RFC permits her to perform the requirements of her past relevant work, and if not, whether she is able to perform other work.

## CONCLUSION

For the foregoing reasons, the Court hereby DENIES IN PART AND GRANTS IN PART Oliver's motion for summary judgment and GRANTS IN PART AND DENIES IN PART the Commissioner's cross-motion for summary judgment. This matter is remanded for further proceedings in accordance with this Order.

**IT IS SO ORDERED.**

Dated: April 22, 2010

JEFFREY S. WHITE
UNITED STATES DISTRICT JUDGE